Computer Health Network, Inc. at Ball, and on behalf of the affluence, Mr. Kevin Q. Butler, on behalf of the affilee, Mr. Kevin N. Gallagher. Mr. Butler? Good morning, Your Honors. Good morning. You may proceed. I may please the Court. My name is Kevin Butler, and I represent the Affiliate Group, LLC,  and I represent the Defendant's Appellants. There are several separate issues in this case. Essentially, this case involves an arbitration agreement, an arbitration award, and whether the arbitrator is seated as authority under the scope of the arbitration agreement and whether he complied with the notice provisions of the Uniform Arbitration Act. I think the best place to start is with the threshold question of the notice provision, since if there's no notice, the award is not valid. Can I ask you, in connection with your threshold question, I'd also like to ask you the secondary threshold question of how you avoid the argument of forfeiture or waiver in this case. In light of the fact that I understand nobody participated in the arbitration hearing, generally speaking, if you're going to object, you need to appear and make a motion challenging that you're not subject to arbitration in a timely manner, or secondly, following the statute that says you could have moved to stay to threaten arbitration. And basically, as I understand it, your position was, this has nothing to do with us. We're not participating in any manner. So address why that's not a waiver or forfeiture. Sure. As far as appearing before the arbitration hearing and objecting, the arbitrator did consider our objection to the hearing and ruled on it. When did you make that objection? I'm not sure of the date. Didn't he also send a letter saying that you weren't going to participate? Yeah, that letter was sent during the course of negotiating a settlement of the thing before an arbitration hearing was even suggested. Arbitration was suggested by the other side. We sent a letter saying we don't believe we need to appear at this meeting. We're not going to appear at anything. A week before or a week later, we offered money to settle the claim. That was part of a settlement negotiation. That had nothing to do with the arbitrator at that point? That had nothing to do with the arbitrator at that point. What did you do in connection to the arbitrator? During the hearing at the arbitration, the arbitrator discussed the letter. The letter was presented to the court. Who presented it? Not to the court, to the arbitrator. I believe it was sent to the arbitrator. I'm not sure of that fact. If you give me a moment, I can... Judge, I'll have to find that and get back to you on rebuttal. I think it's important. You never participated in the hearing before the arbitrator, correct? Right, and I don't believe the Arbitration Act requires us to appear. In fact, it tells us if we do appear, we waive some of our rights when we object. That may be true in one context, but I'm trying to find out what you did at all vis-à-vis the arbitrator to make it clear that you felt that they had no authority and you were objecting to the arbitration. That seems to be unclear that you did that. Okay. Unless you can find this letter to me. Judge, I don't have it at the tip of my memory. All right, well, if you can locate it, feel free. I will look at it. But Section 5, regardless of that issue, there is a statute. Section 5 of the statute requires that the arbitrator shall appoint a time and place for the hearing and cause notification to the parties to be served personally or by registered mail not less than five days before the hearing. Didn't you just say the magic word, cause? Does it say the arbitrator has to serve the parties? It says it caused notification, but that was never done. Either way, it was never done. It doesn't matter who did it. Either way, it was not done. So your position is you didn't get notice at all?  Not five days' notice is according to statute. Of any of the hearings? None of the hearings that went forward did we get any. I'm sorry, I didn't mean to cut you off. You never got notice of any of the hearing dates. Is that your position? No. No, I think it's different than that. I think I never got five days' notice as required by statute of any of the hearing dates. You never got proper notice of any of the hearings? Correct. So on November 28th, the plaintiff sent notice on behalf of the arbitrator to us, but then that date changed and we got notice the day before the hearing. Not the date, but the time of the hearing changed. We got notice of the actual hearing one day before it happened. That's not five days. Then it got changed again and we got one day notice again. That's not five days. Then it got changed again and we got one day notice. No change. That's not five days. And so regardless, if we appeared at the thing, we didn't get the proper notice under the statute for the arbitration hearing. And I don't see how it can be a valid arbitration award when we haven't complied with section 5 of the statute. So would the remedy be to send you back for another arbitration hearing? I think you vacate the award. And send you back for another arbitration hearing? You'd send it back to the circuit court for a hearing. If this is the only thing you were to rule on. Right, but wouldn't the remedy be to get another hearing? If you didn't get proper notice, okay, then we'll get you another arbitration hearing. Well, I think that turns to the second issue. Don't all those issues kind of go away if we start over and you get a new arbitration hearing? If we get a new arbitration hearing, then we could do that. But at that point, we're at the, yeah, I believe if this is the only issue we're ruling, yes, I think that's the proper procedure. Just to clarify your point once and for all, you're not saying you didn't get notice at all. You're saying you did not get proper notice in compliance with the statute. And because you didn't get proper notice, you were not required to come forth before the arbitrator would object. Yeah, and if you look at the second sentence of section five, it says appearing, if you appear at the hearing, you waive your argument on that issue. So that would be giving up a right to go do that at that point. And since we do not believe that any of this was at all within the scope of the agreement, which if you look closely, clearly is not. And let's get to that. What they're seeking for in this agreement is for third-party fees. Third-party fees, which under the contract, there's a specific provision that says this isn't part of the agreement. If you look at page 87 of the record on appeal, this is the contract between Advocate Financial and my clients. It says third-party fees. Client's agent, which is the plaintiff's, shall have the ability to earn any other fees associated with the solution and pay to the client's agent from any third party. These fees are separate and independent of the determinant solution fees. This is not a part of the agreement. We did not agree to pay third-party solution fees. That's number one. And if you look on my initial brief, I have reproduced the actual invoice that they sent, which is the whole basis of this arbitration agreement. And I'm trying to find the page. Here it is. It's on page five of the brief. It has initial retainer fee, which we paid $2,000. The other $2,000 is if they find a solution. They didn't find a solution. Second thing. Did the arbitrator find that they found a solution? He found that they – no, he didn't. In fact, they admit at the arbitration hearing that they didn't find a solution, but that they did everything to present an opportunity for us to find a solution. And the contract specifically says it's got to be completed. The whole transaction's got to be completed before there's a solution. I thought the arbitrator found the reason why it wasn't completed was because your client refused to sign on the dotted line. That's because the contract had already expired. He said, I believe his findings were that when the solution was found, it was before the extension. Well, there was two agreements. There was two prospective solutions. One was withdrawn in March of 2011. Bank offered it and withdrew it. The second solution happened – the first offer was made by this heteroge group two days after the agreement expired, and we turned it down because we had to go to our family member, Mr. Pruos's uncle, had to pay the bill. That's the solution we found. Two days after the agreement had expired – What's the date you're saying that the agreement expired? June 11, 2012. Not June 23rd? No. And if you look at the – That was also something the arbitrator considered as to when the contract started. Yeah. What he did was by – he implied that it was a different date than the date of execution is when you should measure the six months from. We measure the six months, from what I understand, based upon the date of your payment. Sure. I agree. That's what he said. Because until there was payment, there wasn't – the contract wasn't fully enforced. Well, I think the law is very different about what an executed contract is. I think if you look at Black's dictionary, it will tell you it's a document – the date a document is signed or a signed document is an executed document. And if you look at their brief, they admit it was executed on January 11th, not January 23rd. They just say, well, it's our belief that since January 3rd is the date we cashed the check or delivered the check, that's the date we should consider it. But this isn't a unilateral contract. This is a bilateral contract. And so this isn't – the promises become due upon payment. Didn't they also say that's the way we always do it? The way he says he always does it. Doesn't mean you always do it that way. That's certainly not the way the contract says it's done. Why don't you do it that way all the time? What's that? Why don't you do that all the way, all the time? Well, in a unilateral contract, I would. But this is a bilateral contract where both sides have signed a paper saying I promise this and I promise that. And that's an executed contract. So you're saying that the mutual promises were the consideration. Sure. The contract was enforced as opposed to the additional consideration of payment. Sure. It was signed on that date with making mutual promises. Counsel, let me ask you a very pointed question. Do you have any authority for the proposition that vacating the award outright is a remedy for defective notice? Can you call it – do you have cases that say that? For defective notice? There are a number of cases about it. They are all very old. There's a dearth of case law. Do they hold that proposition? Yes, they do. Like I said, there's a dearth of case laws on this issue, and I can give you citations to – You don't have to give me every citation. I just want to know if you have case law for that proposition. That's all. Yes, I do. Okay. And I can – Alexander v. Cunningham, which is 111 Illinois 511. Bingram v. Whitmore, 75 – this is how old these cases are. But these are the first cases. If you look at the digest of this act, you'll see all these old cases, but it's all about vacating the award without proper notice. All right. So if there's a dispute over the effective date, the arbitrator seems to hold that even if it wasn't extended and there's some defect or argument about the effective date, he also held that the fees were based on work the plaintiff performed during the original term. What's your answer to that assertion? There was some work done in the original term, but that's not what the contract calls for. The contract calls for solution fees, and the solution fees are when the solution is completed. And your position is there was never a solution here? There was never a solution. Never a solution. There was no loan. There was no refinancing. Nothing. Although the arbitrator found there was a solution, right? He didn't really find there was a solution. He said they were entitled to the fees, but he never said there was a – because, in fact, their own people, if you look at the testimony there, testified that there wasn't an actual solution, that no agreement actually happened and the problem wasn't solved. The problem was solved after the fact when Mr. Polis' uncle paid the note. That was only one of the – and that was only one of the problems. None of these things concluded. And their solution fees, which were 5 percent in that thing, that's not what they're trying to collect even. They're not even trying to collect the solution fees. They're trying to collect third-party fees, which, under the contract, are clearly outside the scope. And is the term solution defined in the agreement? Yes. What does it say? I'll give you that section just a second. It's on page 1 of the contract, which is 86 in the record on appeal. It says, solution, whether temporary or permanent, as used in this working agreement, is defined as the act, method, or process of solving the problem. The answer to a problem, explanation, clarification, relief, whether temporary or permanent, et cetera, client's agent will attempt to prevent the further loss of client's net worth, liquidity to provide relief, circumstances communicated by client through the use of client's deems reasonable and prudent. So does that require all parties to sign off on a quote-unquote solution? That seems to me to be broader than we all come to the table and we acknowledge that our problem has been solved. Is that the way you're interpreting it? I see where you're going, but you have to read it along with the solution fees that they're entitled to, which says, client shall, because they're not just saying we solved it, we're entitled to the fees. Yeah. Client shall pay client's agent the sum of 5% less retainer of the amount of a note, discount, note relief at the time the solution is complete. Silence there. Since there is no, and that's the operative sentence, what I just, there's no complete solution here. They came up with a solution that was withdrawn. Is that a solution? What's wrong by the third party and not by them? You're right. Wasn't that because of some gross misrepresentations? Well, there were two issues. There was number one, the Harris Bank, Harris Bank previous foreclosure action, which they withdrew, was still on, it had not, it was coming up in the title search, in the title. And there was also a previous loan of $1.5 million on the thing. There was no, now, that would relate to the first, I would agree that that would relate to the first loan, the Diamond Bank loan, which happened in March. But that clearly has nothing to do with the Hedrick Bank, which came about in August, months after the loan had gone through. Now, they allege the misrepresentation, but what are they doing if they're not doing title searches and things like this in this agreement? I mean, what exactly are they doing? They're just finding someone's name? This idea that we misrepresent, I think, is absolutely false. Of course, we were not at the arbitration to argue that. But the point being is they're relating to third-party fees, third-party fees which are explicitly outside this agreement. And I think if you want to look at the dates of this. How is it outside the agreement? I don't want to belabor this point, but under the section retainer, it says, defendants acknowledge and agree that plaintiffs shall be paid all fees, charges, and expenses associated with the solution provided by plaintiffs or any third party. Does it say that in bold print? Yes, it does. It does say that, but it also says that third-party fees are for them to collect from the third party. Does it really say that? Are you talking about the solution fees section? Is that what you're talking about? Where it says charges, number two, on page 87. Third-party fees. Client's agent shall have the ability to earn any other fees associated with the solution paid to client's agent from any third party. That's totally different, isn't it? What they're saying is any money we can get outside of the agreement, we're entitled to operate independently with the third party. However, if we can document third parties' incurred fees in connection with the solution, quote, unquote, you said you wouldn't pay. Otherwise, what would it mean by saying any other third party? What would be the point of having that bold print if they couldn't recover? Why do you put that in there? It does not say that they're to be paid by us, the third-party fees. Not in that statement. Plaintiffs shall be paid all fees including third party? It doesn't say you would pay it? Okay. Provided by client's agent, client, or any other third party. By the client? So the million dollars my client suggested to spend, I don't get to charge her? But it does say any of the third party. Well, let's talk about who wrote the agreement. Let's talk about the absurdity of suggesting that they're supposed to collect the money from the third party, who isn't a signatory to the contract. Well, they have the relation, this, the plaintiffs had the relationship with HEDG. And, in fact, if you look at the situation there, they had the agreement with them. In fact, I think somewhere in the record there is the agreement between them, between the parties with HEDG. All that means is that there's at least more than one contract involved. I agree. And that's the HEDG loan, which they're trying to collect back in August. The other issue is just the date of the agreement. The agreement is valid for only six months after execution. It's only valid for six days. Valid means binding. Well, wait a second. You keep saying that, but those were issues for the arbitrator to decide. So are you saying just arguing de novo, wanting us to look at the contract, or are you saying that the arbitrator exceeded his authority? I think the arbitrator has exceeded his authority. And what's the basis for that? Well, I believe that. It's a reasonable interpretation. It may not be the interpretation you'd like, but it's a reasonable interpretation, isn't it? I don't think an arbitrator is allowed to extend the terms of an arbitration agreement by implication or by construction. Isn't it for the arbitrator to determine his or her view of all the terms of the contract, including when it starts and when it ends? Not absent an ambiguity, but he can do that. Well, there's an ambiguity because we have two people saying it's A or it's B. I mean, it's a reasonable interpretation. Isn't that what arbitrators are supposed to do? I'm a little confused. I'm trying to figure out what you're saying is a reasonable interpretation. Well, you keep saying, you know, the contract started on January 11th, not the 23rd. They say it, too. Look on page 1, 5, 7 of their – 1, 3 and 7 of their brief. They say it, too. Go ahead. Just finish your argument. Also, there's a specific date in that contract. I want to make that clear. And that's June 11th, 2001. June 11th. Okay, it's not January or June 23rd. It says if you want to renew this contract, you must do so prior to June 11th. It doesn't say prior to June 23rd. It's a specific date. I can't fathom any interpretation that would say that June 11th does not mean June 11th. That means June 23rd. That means some other date. It's pretty clear that June 11th is spelled out specifically in that provision. Any other questions? No. Thank you, sir. You'll have an opportunity to make rebuttal. Mr. Gallagher? You may proceed. Thank you very much, Your Honor. I may have pleased the court. My name is Kevin Gallagher. I'm an attorney with the law firm of Brooks, Terullis & Tibble in Naperville, Illinois. And I'm here on behalf of the Plaintiff Appellee Advocate Financial Group. Your Honors, this case is very simple. It involves a private contract to arbitrate disputes between two parties. And one of the parties chose not to participate. Well, what about the notice? Yeah, isn't that the critical issue here? He's saying that, yeah, there was notice, but it was not in compliance with the statute. So I have a two-part question. Is that true? And if so, are there cases that say he's not entitled to, as he alludes to, vacate the award on the basis of defective notice? So what have you to say in regard to that? I'm sorry, Your Honor. What do you say in response to those issues? The purpose of notice statutes is to make sure that the due process rights of all of the parties are protected. The defendant appellant has made no argument that his due process rights were denied. Well, he's arguing that it was defective notice. He's not arguing that his due process rights were denied, though. And so you say you have cases that say where admittedly defective notice was given, it's irrelevant. I'm not saying that it's defective notice. I'm saying that I do have case law. You have case law what? Pardon me? You have case law what, that the one-day notice is as good as five? There is not one-day notice. The initial notice was set well within the initial timeframe. Okay, but the bottom line here is the December 5th notice, it was for 10 o'clock, and then it was changed to 9 o'clock, from 9 o'clock to 10 o'clock. So you're saying that was proper five-days notice. Correct. What about the time change? Does that trigger a new requirement for five-days notice? No, it doesn't. Why not? Because had the plaintiff, or I'm sorry, had the defendant attended that meeting, that hearing, he would have known that. He was an hour early? Correct. So your position is once they did not appear on December 5th at 9 o'clock, they had notice, that was it. Anything else after that was their tough luck for not following up on continuances, if you will. Correct. Okay. I'm sorry, go ahead. All right, so let's assume that that's your first line of defense naturally is they had proper notice, correct? Correct. If we were to find for some reason, and obviously we have never yet that there was no proper notice, is there authority then that on a defective notice issue as opposed to no notice at all, which is what we have here, defective allegedly, that that would mandate vacating the arbitration? In the case of Olin Corporation versus Browning, which is the 1981 case, the court ruled that there was no distinction between registered mail and certified mail. That decision was followed in people XREL had versus the Board of Education. The court in those cases ruled that the issue is whether or not the defendant has been denied due process. So you don't really have a case. I mean, I don't know if it's an analogy. Certified, registered, the issue there wasn't the amount of notice or the nature of it. It was whether certified or registered was sufficient, correct? Correct. Okay. That's a little bit different here. He's claiming there was a shorter time or he was confused by the reschedule. So you don't really have cases on point at this point, correct? Correct. All right, that's all I wanted to know. I mean, I would argue that the time to raise the objection to notice is not in the appellate court. The objection to the notice should have been at the arbitration hearing. But he says if I went to the arbitration hearing and said I didn't get proper notice, he's waived those issues. He could have sent a letter. He could have faxed. He could have emailed. He could have texted. There are any number of ways in which he could have communicated his objection to notice and preserved his right to appeal it. So your position is it was good notice and even if it wasn't, he's waived it? Correct. Okay. It's a rather novel thing, for me at least, to hear or read that a contract is effective as to the date of the payment, as opposed to the date of the execution of it or signature of the parties being attached, without the contract specifically setting forth that it doesn't take effect until such time as some act in the future actually takes place. So could you explain either where in the contract it says that the contract shall only become effective on a certain act or what's your authority for the claim that the effective date is the 23rd and not the 11th? Your Honor, I would say that notwithstanding the fact of the effective date of the contract, the arbitrator made a finding that the plaintiff did perform the contract within the timeframe of the contract. Well, we're going to get to that issue after you address this one. If you want to not address it, fine, but don't think that what you're saying to me is what I consider to be a response to my inquiry. I'd prefer not to answer. Okay. So let's get to the next issue that you just started discussing. The arbitrator found that within the timeframe of the contract, and I would correct opposing counsel, six months after January 11th would have been July rather than June. Right. So that's just a clarification point. The arbitrator found that the defendant did present two solutions on two occasions. The first solution was in March when Diamond Bank secured a loan commitment in the amount of $1 million. For the appellate to state that he did not know about that is hard to believe because he signed documents, he submitted an application, all kinds of documentation was provided to Diamond Bank in order to secure that loan. It wasn't until prior to closing that Diamond Bank obtained a title commitment on the property and found out that there was already a $1 million mortgage recorded against the property that Diamond Bank withdrew its offer. The defendant materially misrepresented his position with respect to his financial situation and in essence was trying to obtain an unsecured $1 million loan from Diamond Bank. Okay, but his point was that those are things that you should have done your homework on and found out about. Well, we didn't. We asked him prior to meeting him whether there was any security against the property, and he told us there wasn't. The method by which we would learn that for sure is in obtaining the title commitment, and because there's a cost associated with the title commitment, you don't order the title commitment until you know for sure that the potential borrower is in fact going to proceed with the loan. Would it be more accurate to say that the loan was secured but subordinated to the prior mortgage? Correct. All right, so you were saying that this is how you earned the fee? Correct. You've got another point, I think, to make. Correct. So that was the first earned fee, and the only reason that that didn't proceed was because of the defendant's material misrepresentation of fact. Having learned that and after Diamond Bank pulled out, the plaintiff continued to secure financing and through hedge financial solutions was able to secure a loan in the amount of $1.5 million, which would have taken out that original mortgage that had been recorded against the property and still provided the defendant with additional capital by which he could seek to resolve the bankruptcy issues that he was facing. Let me see if I can summarize this expedite a little bit. Obviously, your interpretation of what the word solution means is not that the parties sit down across the table and say, all sides agree that we performed a solution because what you're saying is, and I can understand, if you do everything and you bring to the other side what they originally asked for and they say, well, too bad, we've got a better side deal here, he would obviously take the position, and I think probably validly so, that you earned your fee on the solution. Correct. He's saying, however, something about an uncle, somebody came in and provided the solution that you didn't. What do you make of that? Well, at some point, the defendant is arguing that he obtained a loan from a relative. He didn't communicate that to us until after we had already secured the solutions for him. Obviously, had he communicated that to us, he could have terminated the contract and said we don't need to proceed any further, and that would have been the end of the story. All right, let me ask you a couple quick questions. Is there anything in your agreement that precludes him from finding a solution on his own? There is not. So what was the actual solution or solutions you're pointing to? One was the idea that you had a mortgage lined up, but it turned out it couldn't be the first mortgage because it was a prior existing mortgage, and you're saying he misled you on not telling you that. Were there any other quote-unquote solutions that you brought to him? The second solution was through Hedick Financial Solutions. He secured a loan in the amount of $1.5 million, as I stated earlier, that would have taken out that $1 million loan. And had first priority? It would have had first priority and would have provided him with an additional $500,000 that he needed because he was trying to get other creditors that he had to pay. And did you have some letter of commitment that said that? Pardon? Did you have some letter of commitment? Yeah, it's attached to the affidavit. And you brought that to him? Yes. And he said what? I think he said, I've already got financing from someone else. But never told you that? Correct. Okay, so your idea is you made the solution available to him? Correct. It's not your problem or issue that he found somebody else to do the same thing? Correct. Would your position be different if he had notified you that he had found a solution before you found a solution? Yes. Your position would be you wouldn't be making the claim that you are? Our position would be that our services were no longer required at that point in time. There is nothing in our contract that provides that we have the exclusive right to seek a solution. In fact, it specifically states that he has the right to pursue other solutions. But I do think that communication is relevant in terms of whether or not that is earned. Would you agree, though, that the solution, in order to recover any fees at all, there has to be some solution provided, correct? Correct. You just can't go out and spend a lot of hours trying to find something, never find something, and then say, oh, but we've spent a lot of work, so we have a quantum merit there. There is no quantum merit there either, correct? We're not arguing that the fees that we're entitled to are based on efforts you've made, time spent. We're arguing that the fees that we're entitled to are the result of specific actions which the defendant was well aware of because he signed applications and documentation. And the commitment you brought to him. Correct. Okay. I think I see your point. So bottom line, it's your position that what the arbitrator did was within the scope of his authority, interpreting his contract? Yes. Is time up? Do you have any further points on that? No, I really don't have anything. It's unfortunate that we have to this point. Thank you very much. Thank you. Mr. Butler? Yes. With respect to that last argument with the second loan commitment. Right, that's what I asked because he's purported to be saying – That was in August. Pardon? That was in August. You said it's outside? It's way outside. We're talking about that. He's right. I was saying June before it is July. But with the contract expiring six months after even, let's take their number, January 23rd, even six months after that, this is outside the scope. This is way outside the scope. Were the efforts still expended during the scope? What's that? Were the efforts in bringing about this commitment expended before the expiration? It's possible that some of them were. They were working with this company during the time. But they never presented a solution to us. Until after it expired. Until well after – months after it expired. And that's the problem. They didn't renew the thing. We got our own solution. And then they came back to us months later and said – the letter says, congratulations on us helping you find the solution. Here's our solution for you. And they go, oh, here's our fees. Here's our $5,000 fees for that solution that we didn't get you during the scope of our agreement. He was wondering why you never notified him of this other remedy that the parties found themselves. Is it because you thought it expired? Why didn't you let them know that you had found the solution yourselves? Yeah, I'm not sure that's accurate. I think that's – I think that is reflected in the arbitration hearing about that thing. But I don't think that's accurate. They learned of our loan and then they – from a family member, an investor, who comes in. And then they presented us with this. And if you look, Patrick's, the guy who offers the thing, and the plaintiffs are very good friends. They're very good friends. And – Well, what does that mean? Didn't they have a written letter coming from a financial institution or no? Yeah, yeah, yes, they did. But they did this after the fact, after they knew we'd already solved the problem. So – How do they know that you've already solved the problem? Well, there's a letter that shows that they knew. I don't know how they know, but there's a letter that says, congratulations. So you must have known. That would be in October? Yeah, that was in October. Okay, can I ask you two, why wasn't – or why do you choose to not view the extension of the contract as being valid? Well, I think there's case law on that. First of all, we're talking about – I'm lost here for a second. I'm sorry, you're talking about the duration of the contract? Yeah, well, there's case law that says any contractual provision providing for the duration or termination of an agreement are enforceable according to the terms, and that unless it's ambiguous, nobody can. An arbitrator can't. A court can't. Nobody can extend the duration of an agreement by implication or construction if it's unambiguous, which I don't think this is ambiguous. And if it is, it should be resolved against the drafter. So you don't – your position is the contract was never extended? It was clearly never extended. The contract says if you want to extend it, you have to do it prior to 1159. It gives you to the minute when you have to do it, 1159 p.m. June 11th. That's when you've got to extend it, prior to that. They didn't do that. So there's absolutely no question about it. There's no debate about that fact. They did not do that. Okay. Now, earlier I said that there might have been a letter sent to the arbitrator. There's no such letter. I apologize for that. That's confusion on my part. No letter was sent to the arbitrator on our part. Okay. So then really you can't actually represent that you objected to the arbitrator about the proceedings. I understand it doesn't foreclose your notice argument, but correct? We never made any motion with the arbitrator. To object to the proceedings, correct? Correct. All right. Okay. I just want to clarify. Unless there's any other questions, I have nothing further. Thank you. Thank you. The case will be taken under advisement. There will be a short recess.